POLLARD v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. November 25, 1919.)

No. 3315.

1. INDICTMENT AND INFORMATION ☞3—OFFENSE OF MAINTAINING HOUSE OF ILL FAME TRIABLE BY INDICTMENT; "MISDEMEANOR."

The offense of maintaining a house of ill fame within five miles of a military camp, in violation of Selective Service Act, § 13 (Comp. St. 1918, § 2019b), is only a misdemeanor, within Penal Code, § 335 (Comp. St. § 10509), declaring that offenses not punishable by death or imprisonment for a term of one year shall be deemed misdemeanors, for the maximum punishment prescribed is imprisonment for not more than 12 months and a fine of not more than $1,000, or both, and it is uncertain at the time of sentence whether defendant, though given the maximum sentence, would be unable to pay his fine and stand committed for more than a year; hence such an offense is triable by information.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Misdemeanor.]

2. CRIMINAL LAW ☞1186(4)—FORMAL DEFECTS IN INFORMATION.

A technical defect in the conclusion of an information, which was formal, is cured by Rev. St. 1025 (Comp. St. § 1691).

3. CRIMINAL LAW ☞1144(17)—PRESUMPTIONS ON APPEAL.

Where counts unassailed were sufficient to support the sentence imposed, the sentence will, where another count of the information was attacked, be presumed on appeal to have been based on the sufficient counts.

4. WAR ☞4—MAINTENANCE OF HOUSE OF ILL FAME.

Where defendant within the prohibited zone received immoral women into a house for the purpose of lewdness, he was guilty of a violation of Selective Service Act, § 13 (Comp. St. 1918, § 2019b), though he was not the owner of or in control of the premises, provided he knowingly aided in maintaining the place of ill fame.

5. CRIMINAL LAW ☞656(9)—REMARKS OF TRIAL JUDGE.

In a prosecution for maintaining a house of ill fame, etc., within five miles of a military camp, in violation of Selective Service Act, § 13 (Comp. St. 1918, § 2019b), the remarks of the trial judge that the conduct of a witness "was awful" did not impute guilt to defendant, and statement that he did not believe defendant was imposed upon by immoral women, who frequented his hotel, etc., was a permissible expression of opinion, in view of his subsequent charge that his expressions of opinion were not binding, and that the jury were free to disregard them.

6. CRIMINAL LAW ☞721½(3)—COMMENT OF PROSECUTOR ON FAILURE OF DEFENDANT TO PRODUCE CHARACTER WITNESSES.

Where defendant offered character witnesses, it was not improper for the prosecutor to refer to the fact that defendant failed to produce character witnesses from the place where the offense was charged to have been committed.

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

J. B. Pollard was convicted of violating Selective Draft Act, § 13, by maintaining a house of ill fame within five miles of a military camp, and he brings error. Affirmed.

William H. Atwell, of Dallas, Tex., for plaintiff in error.

Jed. C. Adams, U. S. Atty., and W. B. Harrell, Asst. U. S. Atty., both of Dallas, Tex.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge. The defendant (plaintiff in error in this court) was convicted of violating section 13 of the act of Congress approved May 18, 1917 (40 Stat. 83, c. 15 [Comp. St. 1918, § 2019b]), known as the Selective Service Act, and from the judgment of conviction he has sued out this writ of error.

[1] He complains first that he was tried upon an information, and that the offense with which he was charged was an infamous one, which could be prosecuted only by indictment. The offense is made a misdemeanor by the terms of the statute, and the maximum punishment prescribed by it is imprisonment for not more than 12 months and a fine of not more than $1,000, one or both, and was a misdemeanor under section 335 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [Comp. St. § 10509]). It is contended that a failure to

pay the fine, in the event the defendant was ordered to stand committed until it was paid, would result in 30 days' imprisonment in addition to the 12 months, if the maximum imprisonment was imposed. Such additional imprisonment would, however, be no part of the original punishment. It would be uncertain, at the time the sentence was imposed, whether the additional 30 days would ever be served. It is not additional to the 12 months, but an alternative to the payment of the fine imposed, the endurance of which depends upon the willingness and ability of the defendant to pay the fine. It is a means of enforcing the payment of the fine, and not a punishment by imprisonment for the offense. The offense was not one involving moral turpitude, nor was it a crimen falsi, and it was not punishable by a penitentiary or hard labor sentence, and so was not an infamous crime, which was triable, under the Constitution, only by indictment. A contrary view would lead to the result that the maximum imprisonment could never be legally imposed, attended with a fine which a defendant was ordered to stand committed to pay, since, in that event, the actual imprisonment might exceed the 12 months maximum, in the event the fine was not paid. It cannot be assumed that Congress would impose a maximum sentence impossible of legal execution.

[2] The conclusion of the information is purely formal, and, though it were technically incorrect, the defect is cured by R. S. § 1025 (Comp. St. § 1691).

[3, 4] The plaintiff in error also contends that the first count of the information is insufficient, because it charges no offense created by the act of Congress. The act which authorizes the Secretary of War to make regulations, and which makes it an offense to violate the regulations made by him, is asserted to be a delegation of legislative power to the Secretary. We find it unnecessary to pass upon the sufficiency of the first count, because the remaining counts support the sentence imposed, and it will be referred to the good counts of the information. The remaining counts charge the defendant with unlawfully, knowingly, and willfully receiving and permitting to be received and to remain for immoral purposes—i. e., for the purpose of assignation and prostitution—a woman into a structure, etc., then and there used for the purpose of lewdness, assignation, and prostitution, within the prohibited zone of a cantonment used for military purposes. The act makes it an offense for one to receive or permit to be received or remain for immoral purposes any person into any structure, etc., used for purposes of lewdness, assignation, or prostitution within the prohibited zones. The language of the information and of the statute are substantially alike. The criticism is that the information does not charge the defendant with having been the owner of or in control of the premises, and hence that his act may have been an entirely innocent one, consistently with all the information charges.

We do not think the information bears such a construction. Its effect is to charge the defendant with having received the woman into a place known by him to have been kept for the purpose of assignation or prostitution, knowing that she was being received there for immoral purposes. If the defendant did this, he violated section 13 of the act,

though he was not the owner of or in control of the premises. If he knowingly aided and abetted the owner or proprietor by giving a woman entrance to the premises for such purposes, his guilt was that of a principal, and might be so charged under the Penal Code.

[5] The conduct and certain remarks of the trial judge are assigned as errors. The judge's statement that it "was awful" did not impute guilt to the defendant, but characterized the conduct of the witness who was detailing her conduct from the stand. It did not tend to place responsibility upon the defendant for such behavior of the witness. The statement of the court that the defendant was not imposed upon by the witness was a permissible expression of opinion by the trial judge, in view of his subsequent charge to the jury that such expressions of opinion by the court were not binding on the jury, and that they were free to disregard them.

[6] Lastly, the remark of the United States attorney, addressed in argument to the jury, to the effect that the defendant brought no character witnesses from Ft. Worth, where light was wanted, was not an improper one. The defendant had put his own character in issue by offering evidence in support of it. It was then competent for the government either to offer counter evidence or to criticize in argument any weakness in that offered by the defendant. The locality of the residence of the witnesses, as being distant from the place where the offense was charged to have been committed, was proper comment.

We find no reversible error in the record, and the judgment is affirmed.